# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

**JERRY CHAMPION, ADC #91354**                                                                **PLAINTIFF**

V.                              Case No. 2:11CV00037 JMM-BD

**JOSEPH HUGHES,** *et al.*                                                                              **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.     Procedure for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody.  Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.  An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.  A copy will be furnished to the opposing party.

If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record.  By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

**II.     Background:**

Plaintiff Jerry Champion, an inmate formerly housed at the East Arkansas Regional Unit of the Arkansas Department of Correction ("ADC"), filed a complaint under 42 U.S.C. § 1983, alleging that Defendants Donald Anderson, M.D., Joseph Hughes, M.D., Quible Butler, L.P.N., Alethia Leak, and Wendy Kelley were deliberately indifferent to his serious medical needs relating to a skin condition on his hands and feet. (Docket entry #2)

Defendant Kelley has filed a motion for summary judgment (#87) contending that Mr. Champion did not exhaust his administrative remedies with respect to any claims against her. Ms. Kelley also claims qualified immunity.

Defendants Anderson, Hughes, Butler and Leak (the "Medical Defendants") have filed a separate motion for summary judgment (#95), arguing that Mr. Champion failed to exhaust his administrative remedies with respect any claims prior to January 12, 2010, and that the evidence establishes they provided Mr. Champion with regular treatment for his skin condition.

Mr. Champion has responded to both motions. (#93, #98) Based on the evidence presented, the Court recommends that both motions for summary judgment (#87, #95) be GRANTED.

### III.  Discussion:

  A.  Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party must go beyond the pleadings and, by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005)(internal citation omitted) ("The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.") If the opposing party fails to show that there are specific, important facts in dispute, summary judgment should be granted. See *Celotex*, 477 U.S. at 322.

  B.  Exhaustion

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all "available" remedies before filing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a);

*Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001)(holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained"). For purposes of § 1983, an "available remedy" is one that is "capable of use for the accomplishment of a purpose; immediately utilizable [and] accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001). It does not matter whether the prisoner subjectively believed that there was no point in pursuing his administrative remedies. *Lyon v. Vande Krol*, 305 F.3d 806, 808–09 (8th Cir. 2002); *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000), cert. denied 531 U.S. 1156 (2001). And if exhaustion is not complete by the time a lawsuit is filed, the Court must dismiss all claims that have not been exhausted. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

Prisoners may be excused from exhausting administrative remedies, but only when correctional officials have prevented them from using the procedures or when the officials themselves have not complied with the administrative procedures. *Miller v. Norris*, *supra* at 740; *Foulk v. Charrier*, 262 F.3d 687, 697–98 (8th Cir. 2001). That is not the case here.

Administrative Directive 09-01 contains the Arkansas Department of Correction Grievance Procedure in effect during the time period relevant to this lawsuit. (#87-2) According to ADC 09-01, an inmate must specifically name each individual involved to allow a proper investigation of the grievance and response. (#87-2 at p. 5, #87-3 at p. 2)

According to the evidence presented, Mr. Champion did not file a medical grievance until January 27, 2010. (#95-2 at p. 1) After that, he successfully exhausted at least thirty-six medical grievances. (#87-3 at p. 2) None of the medical grievances filed by Mr. Champion, however, named Defendant Kelley. (#87-3 at p. 2)

Mr. Champion has not come forward with any evidence to rebut Ms. Kelley's evidence that he did not fully exhaust his administrative remedies as to his claim against Ms. Kelley prior to filing this lawsuit. Nor has he provided evidence that he was prohibited from pursuing his administrative remedies. Based on the undisputed evidence, Mr. Champion did not exhaust a grievance against Defendant Kelley related to his medical condition prior to filing this suit. For these reasons, Defendant Kelley is entitled to judgment as a matter of law.

Mr. Champion alleges continuous deliberate indifference on the part of the Medical Defendants since July 2009, and, since January 2010, has filed several grievances related to his medical treatment. Accordingly, the Court will consider the merits of Mr. Champion's deliberate indifference claim against the Medical Defendants.[1]

---

[1] Unlike Defendant Kelley, the Medical Defendants do not allege that Mr. Champion did not name them in his exhausted grievances, but instead claim that because he did not file a grievance until January 27, 2010, Mr. Champion is not entitled to raise claims related to any treatment he received prior to January 12, 2010. (#97 at pp. 4-6) Because the Court concludes that Mr. Champion has not established a deliberate indifference claim against any of the Medical Defendants, it is not necessary for the Court to decide whether the Medical Defendants' prevail on their partial exhaustion argument.

C.   Deliberate Indifference

The Eighth Amendment protects prisoners from "acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285 (1976).  However, "[f]ailure to provide medical care to prisoners amounts to a constitutional violation only when the plaintiffs show (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs."  *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008) (quoting *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997)).

To prevail in this case, Mr. Champion must prove more than that the Medical Defendants were negligent, more even than that they were grossly negligent.  And "mere disagreement with treatment decisions" is not enough to state a constitutional claim. *Alberson v. Norris*, 458 F.3d 762, 765 (8th Cir. 2006) (citing *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)).

Inmates who complain that a delay in medical treatment must provide either "verifying medical evidence" to establish the detrimental effect of the delay or show that the need for medical treatment would have been obvious even to a non-medical layperson.  See *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995).  Here, Mr. Champion has failed to meet his burden with respect to any of the Medical Defendants.

1.  *Donald Anderson, M.D.*

Mr. Champion names Dr. Donald Anderson as a Defendant. At his deposition, Mr. Champion admitted, however, that he was not sure of the first name of the Dr. Anderson who examined him at the East Arkansas Regional Unit. (#95-3 at p. 34) The Medical Defendants attach to their Statement of Undisputed Facts, an affidavit from Dr. Donald Anderson stating that he was formerly a physician at the McPherson Women's Unit of the ADC, but that he has never treated Mr. Champion and has never been to the East Arkansas Regional Unit of the ADC. (#95-5) Mr. Champion has not come forward with any evidence to contradict Defendant Anderson's testimony. Accordingly, Defendant Donald Anderson is entitled to judgment as a matter of law.

2.  *Alethia Leak*

Mr. Champion alleges Althia Leak was deliberately indifferent to his serious medical needs based on the fact that she did not respond to his request for information about his appointment with a dermatologist. (#95-3 at pp. 39-41) Ms. Leak was a medical records clerk who did help schedule patients for outside appointments, but she was not permitted to do so unless authorized to by the medical provider. (#95-6 at p. 5) Medical providers treating Mr. Champion did refer him to a dermatologist for assessment and treatment of his skin condition on two occasions. (#95-6 at p. 5) Mr. Champion has failed to come forward with any facts supporting a claim of deliberate indifference against Ms. Leak, and she is entitled to judgment as a matter of law.

3.  *Quible Butler, L.P.N.*

Mr. Champion alleges that Licensed Practical Nurse Quible Butler was deliberately indifferent to his medical needs because she administered a steroid injection to Mr. Champion that was ordered by his treating physician. (#95-3 at p. 37) The undisputed evidence shows that Dr. Hughes ordered that Mr. Champion receive a steroid injection to treat his skin condition. (#95-6 at p. 5) As an L.P.N., Ms. Butler cannot prescribe medication, but she is qualified to administer medications prescribed by a physician. She administered the injection to Mr. Champion as ordered and prescribed by Dr. Hughes. (#95-6 at p. 5) Mr. Champion might disagree with this course of treatment, but his disagreement does not amount to deliberate indifference.

At his deposition, Mr. Champion also claimed that Ms. Butler influenced Dr. Hughes's medical decisions by being in the examination room and having discussions with Dr. Hughes about him. (#95-3 at pp. 38-39) He has not elaborated, however, on any specific instance where she influenced his treatment or explained how that resulted in any injury. Mr. Champion's vague allegation does not state a claim of deliberate indifference against Ms. Butler, and she is entitled to summary judgment.

4.  *Joseph Hughes, M.D.*

Mr. Champion claims that Dr. Hughes was deliberately indifferent because the medications and treatment he prescribed did not resolve the skin condition he suffered

from. (#95-3 at pp. 21-22) At his deposition, Mr. Champion stated that Dr. Hughes did not treat his skin condition, "the way it should have been treated." (#95-3 at pp. 21-22)

The medical records attached to the Medical Defendants' statement of undisputed facts do not support Mr. Champion's claim of deliberate indifference to his skin condition. The records indicate that Mr. Champion's skin condition improved at times and worsened at times, but that Dr. Hughes and other medical care providers continually monitored his condition. (#95-4) From a period between July 21, 2009, until he left the East Arkansas Regional Unit on November 1, 2010, Dr. Hughes examined Mr. Champion's skin condition twelve times. (#95-4, #95-6) Over the course of treating Mr. Champion, Dr. Hughes prescribed a number of different medications to treat the skin disorder including: Triamcinolone Acetonide lotion; hi-top supported footwear; fluocinide ointment; sulfamethoxazole/Trimethoprim tablets, Prednisone, Doxycycline, Ketoconazole cream, Fluocinolone cream, Cephalexin, Tetracycline, Ketoconzaonole, and Clobetasol ointment. (#95-4) Many of these medication were either renewed or re-prescribed based on their effectiveness.

On November 11, 2009, Dr. Hughes took a punch biopsy of Mr. Champion's skin to aid in diagnosis. (#95-4 at pp. 16, 19, #95-6 at p. 2) The dermatopathology report showed psoriasiform dermatitis. (#95-6 at p. 2)

Dr. Hughes referred Mr. Champion to a dermatologist for assessment of his skin condition. (#95-4 at p. 49, 66-74, 93-98) Cheryl A. Armstrong, M.D., a dermatologist at

UAMS, examined Mr. Champion on October 20, 2010.  (#95-4 at pp. 69-70)  Dr. Armstrong performed a punch biopsy of Mr. Champion.  (#95-4 at p. 70)  She diagnosed dermatitis not otherwise specified and prescribed Doxycycline and AmLactin, a lotion.  The dermatologist's diagnosis and treatment plan was not significantly different from Dr. Hughes's diagnosis and treatment plan.

Mr. Champion also claims that Dr. Hughes was deliberately indifferent, because he did not respond to his sick call requests.  (#95-3)  But at Mr. Champion's deposition, he admitted that he did not know whether Dr. Hughes actually knew about any of his sick call requests. and he conceded that every time he was taken to see Dr. Hughes, Dr. Hughes examined him.  (#95-3 at pp. 23, 33)

As noted, to prevail in this case, Mr. Champion must prove more than negligence and more even than gross negligence.  The fact that he disagrees with the treatment he was given is not, standing alone, a claim that rises to the level of deliberate indifference.  Mr. Champion may disagree with the treatment decisions, but he has not come forward with any evidence to create a genuine dispute as to whether Dr. Hughes acted with deliberate indifference in treating his skin condition.  Accordingly, Dr. Hughes is entitled to judgment as a matter of law.

## IV.     Conclusion:

The Court recommends that Defendant Wendy Kelley's motion for summary judgment (#85) be GRANTED, and Mr. Champion's claims against Ms. Kelley be

DISMISSED without prejudice.  The Court also recommends that Defendants Dr. Donald Anderson, Alethia Leak, Quible Butler, and Dr. Joseph Hughes's motion for summary judgment (#95) be GRANTED, and that Mr. Champion's claims against these Defendants be DISMISSED with prejudice.

DATED this 6th day of January, 2012.

_____
UNITED STATES MAGISTRATE JUDGE